# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

March 30, 2010

Paul R. Schlitz, Jr., Esq.
Jenkins, Block & Associates, P.C.
The Symphony Center, Suite 206
1040 Park Avenue
Baltimore, MD 21201

Allen F. Loucks, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

        Re:  Robert Nuton v. Michael J. Astrue, Commissioner,
             Social Security, Civil No. SKG-08-1292

Dear Counsel:

        Plaintiff, Robert Nuton, by his attorney, Paul R. Schlitz, Jr., Esq., filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), pursuant to 42 U.S.C. § 405(g) & 1383(c)(3), who denied his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act").

        This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.  (Paper No. 3; Paper No. 7).  Currently

pending before the Court are cross motions for summary judgment. (Paper No. 20; Paper No. 27).  No hearing is necessary.  Local Rule 105.6.  For the reasons that follow, the Court hereby DENIES plaintiff's Motion for Summary Judgment (Paper No. 20), GRANTS defendant's Motion for Summary Judgment (Paper No. 27), and AFFIRMS the ALJ's decision.

## I.    PROCEDURAL HISTORY

Plaintiff, Robert M. Nuton, originally filed for DIB and SSI on June 8, 2005.  (R. 41-45, 89-90).  Plaintiff's applications were denied at the initial and reconsideration levels.  (R. 33-34, 723-27).  An administrative hearing was held on May 22, 2007 before Administrative Law Judge ("ALJ") Melvin D. Benitz, who issued a written decision on August 10, 2007 again denying plaintiff's applications and determining that he was not disabled within the meaning of the Act.  (R. 7-18, 745-74).  The Appeals Council denied plaintiff's request for review, making the ALJ's opinion the final decision of the agency.  (R. 2-5).  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

## II.   FACTUAL BACKGROUND

The Court has reviewed defendant's Statement of Facts and adopts it as generally accurate, but notes that defendant in its

briefing overstates some of the facts, at least based on the
record citations relied upon.[1]  While none of the overstatements
were significant in terms of the decision in this case, they
certainly undermine the Court's confidence in the government's
recitation of medical history.

### III. ALJ FINDINGS

In evaluating plaintiff's claim for disability, an ALJ must
consider all of the evidence in the record and follow the
sequential five-step evaluation process set forth in 20 C.F.R §
416.920(a).[2]  After proceeding through all five steps, the ALJ in
this case concluded that plaintiff was not disabled as defined

---

[1] For example, defendant states that "VA medical personnel also found that the
plaintiff did not have PTSD." (Paper No. 27-2, 4).  However, of the six
record citations to support this purported statement of fact, only one
clearly does so - (R. 568); another was a negative PTSD "screening" - (R.
179); two contain other psychiatric diagnoses but state "R/O PSTD,"
indicating the provider's consideration of a possible PTSD diagnosis - (R.
373 and 382).  The significance of the last two record citations to the
question of the PTSD diagnosis question are unclear - (R. 280 and 426).
Similarly, defendant states that after his sleep apnea diagnosis, "this
condition greatly improved with Plaintiff's use of a C-PAP machine." (Paper
No. 27-2, 4).  One of the purportedly supportive record citations - (R. 689)
- was the consult request.  Another stated that "sleep still impaired though
improved now that he has his C-PAP machine back." (R. 373).  Another is a
report of a study in hospital showing significant improvement in the syndrome
recommending a trial of a C-PAP at home. (R. 703).  Only one of the record
citations could fairly be said to support the statement of "greatly improved"
condition of the plaintiff - (R. 421).  ("[P]ain interferes with sleep at
times and also has CPAP machine - that helps with sleep a lot.")

  Elsewhere in defendant's brief, defendant cites to Wikipedia for the
definition of "progress notes" in a medical record.  (Paper No. 27-2, 13).
While the Court recognizes that Wikipedia is a useful research tool, it is
not a sufficiently reliable or a recognized authority on medicine or medical
practice.

[2] The Social Security regulations set forth a sequential, five-step process
for evaluating a claimant's eligibility for DIB and SSI.  If the agency can
make a disability determination at any point in the sequential analysis, it
does not review the claims further.  20 C.F.R. § 1520(a).

by the Act.[3]  (R. 10).

The first step requires plaintiff to prove that he is not engaged in "substantial gainful activity."[4]  20 C.F.R. § 416.920(a)(4)(I).  If the ALJ finds that plaintiff is engaged in "substantial gainful activity," plaintiff will not be considered disabled.  Id.  The ALJ deferred determination of this step, but noted that Mr. Nuton "had participated in vocational rehabilitation programs at the VA and had part time jobs since his alleged onset, wherein he could work up to 30 hours," and that he testified that "he worked full time from [] December [2006] till a week before the hearing" on May 22, 2007.  (R. 10, 12).

At the second step, the ALJ must determine whether plaintiff has a severe, medically determinable impairment or a combination of impairments that limit plaintiff's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  There is

---

[3] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A) (2004).
[4] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when he worked before.  20 C.F.R. § 416.972(b).  Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

also a durational requirement that plaintiff's impairment last
or be expected to last for at least 12 months.  20 C.F.R. §
416.909.  Here, the ALJ found that plaintiff's depression was a
severe impairment, but that his other impairments did not
qualify as severe under the Social Security Act.  (R. 12-13).
The ALJ noted "minimal clinical evidence to corroborate or
support any finding of significant vocational impact related to"
plaintiff's sleep apnea, hypertension, obesity, post-traumatic
stress disorder ("PTSD"), and hip and leg pain.  (R. 12-13).
Specifically, plaintiff's fatigue and sleep apnea were treated
"with good success," and his hypertension was "controlled with
medication."  (R. 13).  Plaintiff's PTSD had been addressed in
counseling, and the ALJ noted that his more recent records did
not reflect any PTSD symptoms, although the opinion notes:
"Panic attacks???"  (Id.).  The ALJ cited to VA records that
encouraged plaintiff to "exercise and lose weight," and noted
that he "may use" a cane from time to time.  (Id.).  Finally,
the ALJ noted that plaintiff's obesity, which is not a medically
listed impairment, was not medically severe, and that he had
lost some weight.  (Id.).

     At step three, the ALJ considers whether plaintiff's
impairments, either individually or in combination, meet or
equal an impairment enumerated in the "Listing of Impairments"

in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing" or "LOI").
20 C.F.R. § 416.920(a)(4)(iii).   Here, the ALJ found that,
although plaintiff had some mild and moderate mental
limitations, he did not have an impairment or combination of
impairments that met or medically equaled a listing impairment.
(R. 14).   Specifically, the ALJ noted that plaintiff's
intermittent depression was always "in the context of heavy
illicit drug use."   (Id.).   The ALJ concluded that plaintiff
suffered from "mild restriction of activities of daily living,
moderate difficulties in maintaining social functioning or
concentration, persistence, or pace, and one or two episodes of
decompensation, both of which were related to his substance
abuse."   (Id.).

     Before an ALJ advances to the fourth step, he must assess
plaintiff's "residual functional capacity" ("RFC"), which is
then used at the fourth and fifth steps.   20 C.F.R. §
404.1520(a)(4)(e).   RFC is an assessment of an individual's
ability to do sustained work-related physical and mental
activities in a work setting on a regular and continuing basis.
SSR 96-8p.   The ALJ must consider even those impairments that
are not "severe."   20 C.F.R. § 404.1520(a)(2).   Here, the ALJ
determined that plaintiff had the RFC "to perform light
exertional work, lifting and carrying 10 pounds frequently and

20 pounds occasionally, sitting and standing alternately every 30 minutes during an eight-hour day, mildly limited in pushing and pulling with his lower extremities, avoiding odors, gases, fumes, and heights, hazards, and moving machinery, limited to low stress, simple, routine unskilled jobs, requiring low concentration." (R. 14). First, the ALJ determined that, although plaintiff's medically determinable impairments—hypertension, arthritis, leg pain, depression, and drowsiness—"could reasonably be expected to produce the alleged symptoms . . . the claimant's statements . . . are not entirely credible." (R. 15-16). Rather, the ALJ found that "the record indicate[d] only limited and conservative treatment of [plaintiff's] impairments," and that the majority of his symptoms were "relieved with medication without significant side [e]ffects except complaint of dizziness and drowsiness." (R. 16).

At the fourth step, the ALJ must consider whether plaintiff retains the RFC necessary to perform past relevant work.[5]  20 C.F.R. §§ 404.1520(e), 416.920(e). Noting that plaintiff had previously worked "as a custodian, delivery driver, tire changer, dietary worker, [and] under ground pipe layer," the ALJ concurred with the vocational expert's testimony that plaintiff

---

[5] The regulations state that "impairment(s) and any related symptoms, such as pain, may cause physical and mental limitations that affect what [one] can do in a work setting . . . residual functional capacity is the most [one] can still do despite [those] limitations." 20 C.F.R. § 404.1545.

would be unable to return to past relevant work.  (R. 17).

If plaintiff is unable to resume his past relevant work, the ALJ proceeds to the fifth and final step.  This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, plaintiff is capable of other work in the national economy.  See 20 C.F.R. §§ 404.1520(f), 416.920(f).  At this step, the burden of proof shifts to the agency to establish that plaintiff retains the RFC to engage in an alternative job which exists in the national economy.  McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The agency must prove both plaintiff's capacity to perform the job and that the job is available.  Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before the agency may conclude that plaintiff can perform alternative skilled or semi-skilled work, it must show that plaintiff possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.  Here, The ALJ noted that plaintiff was 43 years old, a "younger individual" according to the Regulations, and had at least a high school education and was able to communicate in English.  (R. 17).  However, he had no transferrable skills, according to the vocational expert.  (Id.).  The vocational

expert testified that plaintiff was capable of performing the requirements of representative occupations including cashier, assembler, or mail sorter, all of which would allow a "sit or stand as needed option," and are available both nationally and regionally.  (R. 18).  Using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ determined that, "considering [plaintiff's] age, education, work experience, and residual functional capacity, [he] ha[d] been capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (R. 18).  Therefore, the ALJ concluded that plaintiff was not disabled, and had not been under a disability from September 1, 2003.  (Id.).

## IV.  STANDARD OF REVIEW

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo.  King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829

F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.  Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing."  Melkoyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V.   DISCUSSION

On appeal, plaintiff asserts that the ALJ lacked the "medical acumen to unravel 350 pages of VA medical records." (Paper No. 20-1, 4).  As a result, plaintiff contends that the ALJ's decision was not supported by medical authority.  (Id., 4-5).  Additionally, plaintiff claims that the ALJ's finding that plaintiff's sleep apnea was not severe "was entirely innocent of any medical authority."  (Id., 5).  After careful evaluation of the record and the ALJ's opinion as a whole, this Court finds that the ALJ's decision was supported by substantial evidence.

### A.   Adequacy of Medical Evidence

Plaintiff contends that "there is no medical foundation for any of the ALJ's findings."  (Paper No. 20-1, 2).  Specifically, plaintiff asserts that the ALJ lacked the "medical acumen to unravel 350 pages of VA medical records," and that an ALJ may not "base a medical determination on the say so of one stand alone non-[examining physician's] evaluation," particularly when that physician "did not evaluate the complete record."  (Paper No. 20-1, 4).  As a result, plaintiff contends, the ALJ's decision was not supported by medical authority.[6]  (Id., 4-5).

First, the fact that no single medical professional

---

[6] In his brief, plaintiff cites to several cases and SSR authorities.  (Paper No. 20-1, 4-5).  However, as defendant correct points out, these authorities do not support plaintiff's contentions.  (Paper No. 27-2, 14-16).

reviewed the entire record prior to preparing an opinion does not prevent the ALJ from analyzing, synthesizing and making a decision on the entire medical record.  See Evangelista v. Sec'y of HHS, 826 F.2d 136, 144 (1st Cir. 1987) (declining to "lay down an ironclad rule" that "there must always be some super-evaluator, a single physician who gives the [ALJ] an overview of the entire case," instead of allowing a judge to "piece together the relevant medical facts from the findings and opinions of multiple physicians").  Indeed, it is the ALJ's duty to analyze and synthesize the medical record as a whole, and to ensure that, where medical opinions are provided, they are accurate. 20 C.F.R. § 404.1527.  Thus, the Court generally agrees with defendant's assertion that an ALJ is vested with the authority to "analyze all medical evidence and make determinations consistent with that evidence even where no doctor provided an opinion concerning such evidence."  (Paper No. 27-2, 12). However, some situations may fall outside this general proposition, as some medical records may require a medical professional's expert interpretation, such as in the case of raw test data.  Or, the medical records may present such complexity of disease and diagnosis that an expert medical analysis is essential.  This is not either case.

The record here does not present a case of crucial, un-

interpreted raw test data.  Rather, the medical record is
otherwise extensive.  It includes nearly 600 pages of medical
records (R. 146-722), 351 pages of which document plaintiff's
treatment at the VA between 2005 and 2007 (R. 371-722).  These
records notably include, among other things, detailed progress
notes (e.g., R. 371-651), as well as radiology and laboratory
results (e.g., R. 654-75), and consultation requests (R. 678-
722).  They discuss plaintiff's test results and discuss his
participation in various therapy sessions, his ability and
attempts to work, his symptoms, medication, and treatment
progress, his physical and functional limitations, and his
medical providers' opinions about his condition and ability to
work.  (E.g., R. 371-722).  The records include evaluations by
numerous physicians, psychologists, and psychiatrists, not to
mention many registered nurses, certified physician assistants,
licensed clinical social workers, and therapists who treated
plaintiff at the VA facility.  (R. 371-722).

Second, the record here includes a Residual Functional
Capacity Assessment--Physical completed by a DDS physician in
August 2005 (R. 153-61), a Medical Expert Report completed by a
treating physician in December 2005 (R. 328-31), a Psychiatric
Review Technique Form completed by a DDS physician in February
2006 (353-66), and a Residual Functional Capacity Assessment--

Mental completed by a DDS physician in February 2006 (R. 367-70).  These assessments and form naturally assist the ALJ in his analysis and evaluation of the plaintiff's medical condition.[7] While it would, of course, have been useful to have had such an assessment by his treaters covering the 2005-2007 VA treatment period, that omission is not fatal to an adequate analysis. Moreover, while plaintiff complains of no medical expert review of these two years of plaintiff's medical condition and treatment, plaintiff did not identify, and this Court's review did not uncover, any medical evidence of disabling conditions in these two years.

Therefore, for the foregoing reasons, the Court finds that the ALJ did not err in deciding plaintiff's case on the basis of

---

[7] The assessments, while contradictory to some extent, report the same underlying conditions and similar restrictions.  For example, the August 2005 physical RFC cited plaintiff's complaints of arthritis and hip/leg pain and noted that plaintiff could occasionally lift up to 50 pounds, frequently lift up to 25 pounds, alternately sit and stand with normal breaks for up to 6 hours out of an 8 hour work day, sit for up to 6 hours of an 8 hour work day, and that he had no postural, manipulative, visual, communicative, or environmental limitations.  (R. 153-61).  The December 2005 Medical Expert Report noted only right leg pain, and reported that plaintiff could lift only 10 pounds, could stand for 4 hours, sit for 8 hours, was restricted from climbing, balancing, stooping, crouching, kneeling, and crawling, and had height restrictions due to his trouble balancing, and should not use machines due to his leg pain and drug abuse.  (R. 328-331).  Both the Physical RFC and the Medical Expert Review report that plaintiff suffers only from leg pain and appear to agree that he is able to sit and/or stand for the greater part of an 8-hour work day.  (R. 153-61, 328-310).  The Psychiatric Review Technique and Mental RFC report that plaintiff has some moderate restrictions due to his substance-induced mood disorder, he appears to retain the functional capacity to work.  (R. 353-66, 367-70).

the record before him.

**B.   ALJ's Analysis of the Record**

Having found that the ALJ properly relied on the available medical records, the Court further concludes that the ALJ's decision was substantially supported by the evidence in the record.

**Step One**

At step one, the ALJ recognized that plaintiff had engaged in substantial gainful activity during the period in which he claimed to be disabled.  (R. 10, 12).  Where an ALJ finds that a plaintiff engages in substantial gainful activity, plaintiff will not be considered disabled.  20 C.F.R. § 416.920(a)(4)(I). The record provides evidence that plaintiff engaged in substantial gainful activity, including both full- and part-time work within the vocational rehabilitation clinic's Work Therapy program and with rehabilitation community partners, and continued to be able to engage in such activity.  (R. 420, 434-35, 440-47, 491-96, 512, 526, 539, 533, 541-42, 545, 550, 553, 555, 563, 569-70, 573, 580, 623, 687-88, 712-15, 749-50). Indeed, the record shows that plaintiff's doctor cleared him to work in June 2006.  (R. 578).  Plaintiff's brief also highlights the fact that he began to work again in early 2007.  (Paper No. 20-1, 5).  Nonetheless, the ALJ deferred determination of this

15

step and proceeded with the five-step analysis.  (R. 12).

Plaintiff does not object to the ALJ's treatment of this step.

**Step Two**

At step two, the ALJ found that plaintiff's depression was

severe under the Social Security Act, and that his other

impairments had been treated successfully or controlled with

medication.  (R. 13).  The ALJ also noted that plaintiff's

obesity was not medically severe, and that plaintiff had lost

some weight.  (Id.).  Plaintiff objects to the ALJ's failure to

find that plaintiff's sleep apnea was "severe."  (Paper No. 20-

1, 5).  In analyzing step two, the ALJ cited to the record and

itemized his findings as to the severity of plaintiff's

depression, sleep apnea, hypertension, obesity, PTSD, and hip

and leg pain.  (R. 12-13).  Plaintiff's contention that the

ALJ's decision was not informed by the VA records is baseless.

See (Paper No. 20-1, 5 (contending that the ALJ's determination

that plaintiff did not suffer from severe sleep apnea was

"medically unsupported" because reports of plaintiff's sleep

apnea were not submitted "until the ALJ hearing")); (R. 747-48

(recording that counsel for plaintiff advised the ALJ that he

would send "300-some pages" of medical records to "updat[e] his

treatment since March of 2006," the date of his previous

hearing)); (R. 498-99 (recording the results of an October 13,

16

2006 sleep apnea test)).  In fact, the ALJ cited to these very records, noting that "[a]n abnormal sleep apnea test was consistent with severe Obstructive Sleep Apnea Syndrome and CPAP treatment was initiated with good success."  (R. 13).

The record shows that plaintiff's daytime fatigue and obesity prompted his treating physicians to note the possibility of a sleeping disorder as early as 1999 and 2003.  (R. 300, 348).  In June 2006, plaintiff reported to his doctor that his sleep was "good," but the following month reported daytime somnolence.  (R. 556-58, 620-23).  Plaintiff was diagnosed with severe obstructive sleep apnea in late September 2006 and started using a C-PAP machine shortly thereafter.  (R. 474-78, 689, 696, 702-07).  Following his diagnosis and receipt of the C-PAP machine, plaintiff's sleep apnea appeared to be controlled except for a few instances when he failed to use the machine or relapsed with respect to his alcohol and/or substance abuse. (R. 374, 381-83, 396-98, 413, 421-23).  Neither before nor after plaintiff was diagnosed with sleep apnea and began receiving treatment, did his treating physicians suggest that his sleep problems limited his ability to perform basic work functions. Rather, they reported that plaintiff needed no special treatment and had no limitations beyond slight limitations due to his leg pain.  (R. 188, 248, 326, 328-31, 397, 579, 609-10).  Therefore,

after reviewing the record in full, this Court finds that the ALJ's decision at step two was supported by substantial evidence.

## Step Three

At step three, the ALJ analyzed plaintiff's impairments, specifically including his intermittent depression, short term memory limitations, and fatigue, and compared those impairments to listed impairments 12.04 (affective disorders) and 12.06 (anxiety-related disorders).  (R. 14).  The ALJ cited to the record, noting that plaintiff's "activities of daily living showed functional capacity for work," and that his medication had improved his memory and made him "more alert."  (Id.).  The ALJ concluded that plaintiff had mild and moderate limitations on his functioning, none that met or medically equaled a listed impairment.  (Id.).  Therefore, the Court finds that the ALJ met his duty as to plaintiff's mental impairments.

Although plaintiff does not object to the ALJ's step three analysis, the Court acknowledges that the ALJ failed to address plaintiff's physical impairments in his step three analysis. This Court does not require a written comparison of medical evidence to the Listings' criteria for every alleged impairment to avoid remand.  Ketcher v. Apfel, 68 F. Supp. 2d 629, 645-46 (D. Md. 1999).  However, where there is more than de minimus

medical evidence related to an impairment, the discipline of a
written comparison of all medical evidence to the criteria of a
listing assures deliberate decisionmaking.  This is particularly
the case where a plaintiff suffers from multiple, acknowledged
impairments.  Moreover, the ALJ has a duty to fully explain each
decision.  42 U.S.C. § 405(b); 5 U.S.C. § 557(c)(3)(A).  See
also, e.g., See v. Washington Metro. Area Transit Auth., 36 F.3d
375, 384 (4th Cir. 1994) (vacating an ALJ's decision for failing
to fully explain his conclusion); Hammond v. Heckler, 765 F.2d
424, 426 (4th Cir. 1985) (same); King v. Califano, 615 F.2d
1018, 1020 (4th Cir. 1980) (same); Miller v. Callahan, 969 F.
Supp. 939, 954 (D. Md. 1997) (same).  As the Fourth Circuit has
commented, without an explanation from the ALJ, it is "simply
impossible to tell whether there was substantial evidence to
support the determination."  Cook v. Heckler, 783 F.2d 1168,
1173 (4th Cir. 1986).

The medical evidence in the record was sufficient to
trigger the ALJ's duty to explain his step three analysis of
plaintiff's physical conditions including his sleep apnea,
hypertension, obesity, and hip and leg pain.  Where, as here,
the record suggests that plaintiff may meet many of the
requirements of a Listing, the ALJ must satisfy his duty to
explain by identifying each Listing and discussing why the

Listing was not met in light of the medical evidence.  Failure to discuss conditions plainly implicated by the record is unacceptable.

However, this error does not alone require the Court to remand the case to the ALJ for reconsideration.  First, "a failure to establish disability under the listings by reference to a single, separate impairment does not prevent a disability award."  Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989).  The ALJ's failure to discuss plaintiff's physical conditions at this step is overcome by his discussion of these physical conditions at later steps, where the ALJ found that plaintiff was not disabled on the basis of his physical impairments.  Second, the Court's review of the record has demonstrated the correctness of the ALJ's decision, and a remand for the ALJ's explication would therefore be futile.  Lively v. Bowen, 858 F.2d 177, 182 (4th Cir. 1988) (explaining that remand for lack of analysis and explanation is appropriate only where substantially justified); Ward v. Commissioner, 211 F.3d 652, 656 (1st Cir. 2000) ("While an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.") (internal citations omitted).  Third, at later steps he would be found "not disabled" as a matter of physical impairments.  Therefore, while a fuller discussion is

recommended in the future, the ALJ's decision and the record provides a sufficient basis to evaluate the correctness of the decision in this appeal.

### RFC Analysis and Step Four

Next, in analyzing plaintiff's RFC, the ALJ addressed plaintiff's physical and mental impairments, recognizing his medically determinable impairments -- hypertension, arthritis, leg pain, depression, and drowsiness.  (R. 16).  The ALJ engaged in a comprehensive analysis of plaintiff's mental and physical symptoms and his activities.  (R. 14-16).  Following his detailed analysis, the ALJ concluded that, based on the "limited and conservative" treatment of plaintiff's conditions and the effectiveness of medication in relieving his symptoms, plaintiff was capable of light exertional, low stress, routine unskilled work with some limitations.[8]  (R. 16).  As a result, at step four, the ALJ determined that plaintiff would be unable to return to his past relevant work, which were positions that involved medium to heavy exertion and some skill.  (R. 17).  The record includes references by plaintiff's medical providers to

---

[8] Specifically, the ALJ found plaintiff to have "the residual functional capacity to perform light exertional work, lifting and carrying 10 pounds frequently and 20 pounds occasionally, sitting and standing alternately every 30 minutes during an eight-hour day, mildly limited in pushing and pulling with his lower extremities, avoiding odors, gases, fumes, and heights, and moving machinery, limited to low stress, simply, routine unskilled jobs, requiring low concentration."  (R. 14).

only limited physical restrictions similar to those noted by the ALJ.  Specifically, the records include notations ranging from "no physical restrictions" (R. 188, 248, 326, 397, 609-10) to "may" use a cane (R. 284) to notations of minor limitations based on his leg pain (R. 328-31).  The record specifically notes that plaintiff's medical providers cleared him to work (e.g., R. 578) and that he did in fact work, although often in the shelter/rehabilitation environment (R. 165, 420, 434-35, 440-47, 491-96, 512, 526, 539, 541-42, 545, 550, 553, 555, 563, 569-70, 573, 580, 623, 687-88, 712-15, 749-50).  Moreover, plaintiff does not object to this portion of the ALJ's analysis.  Therefore, the Court concludes that the ALJ's determination is supported by substantial evidence.

## Step Five

At step five, the ALJ concluded that plaintiff was capable of successfully adjusting to other work that existed in significant numbers in the national economy.  (R. 17-18).  In reaching this determination, the ALJ considered the record's many notations of plaintiff's work experience and education, plaintiff's physical limitations, and the vocational expert's opinion.  (Id.).  Plaintiff does not object to the ALJ's analysis at step five, and the Court concludes that the ALJ made no error at this step:  The vocational expert's testimony was

properly based on his observation of plaintiff's testimony and the ALJ's summary of the record and plaintiff's conditions and limitations, and the ALJ properly relied on the vocational expert's testimony in combination with the record in concluding that plaintiff was capable of successfully adjusting to other work that existed in significant numbers in the national economy.  (R. 767-72).

## VI.   CONCLUSION

Having found the ALJ's analysis to be supported by substantial evidence at each of the five steps of the sequential evaluation process, the Court hereby DENIES plaintiff's Motion for Summary Judgment (Paper No. 20), GRANTS defendant's Motion for Summary Judgment (Paper No. 27), and AFFIRMS the ALJ's decision.


Date:   ___3/30/10___                 _____/s/_____
                                      Susan K. Gauvey
                                      United States Magistrate Judge